UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

NO. 25-13157
_____

UNITED STATES OF AMERICA,

Appellee,

-vs-

AUSTIN MICHAEL BURAK,

Appellant.

_____

On direct appeal from a conviction in the
United States District Court
For the Southern District of Georgia
_____

**BRIEF OF APPELLANT**
_____

Skye Ellen Musson
State Bar No.: 513712
221 W. Duffy Street, D
Savannah, Ga 31401
Skye@mussonlawoffices.com
Phone: 912-596-4661

# STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests an oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules. The facts of the case give rise to nuanced Fifth and Sixth amendment claims. The issues are complex and the facts, legal argument and decisional process would be significantly aided by oral argument due to the complex nature of the issues and the cumulative nature of the issues.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ..............................i

TABLE OF CONTENTS..........................................................ii

TABLE OF CITATIONS........................................................ iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ................................................................ 1

STATEMENT OF THE ISSUE ........................................... 2

STATEMENT OF THE CASE ............................................ 3

   1.  Course of the proceeding and disposition in the lower court. ......... 3

   2.  Statement of the facts. .................................................... 5

     a. Expert witness testimony. ............................................. 7

     b. Failure to Provide Exculpatory Evidence .................... 10

     c. Sentencing Enhancement............................................. 16

   3.  Statement of the standard of review ............................. 16

SUMMARY OF THE ARGUMENT..................................... 19

   1.  The District Court erred by failing to hold a *Daubert* hearing or a pretrial hearing as to the expert and whether the expert was qualified to testify, including concerns of truthfulness. .................................... 22

   2.  Second, the prosecution failed to meet the requirements of providing exculpatory information and limited investigation into last minute disclosures resulting in Appellant not receiving a fair trial under the Fifth and Sixth Amendments of the Constitution.............. 28

   3.  Third, the Court impermissibly curtail the investigation and questioning of the witnesses offered under Federal Rules of Evidence 404(b) and 413 and then use this information improperly in the sentencing phase as both justification for an increased sentence and for point enhancement purposes in violation of the Sixth Amendment of the Constitution.................................................................. 34

CONCLUSION .............................................................. 38

CERTIFICATE OF COMPLIANCE............................................ 40

CERTIFICATE OF SERVICE ....................................... 41

# TABLE OF CITATIONS

Cases:

*Apprendi v. New Jersey*,
    530 U.S. 466, 490, 120 S. Ct. 2348, 2363 (2000)......34, 35

*Brady v. Maryland*,
    373 U.S. 83 (1963)..........................11, 17, 28, 29, 30, 38

*Daubert v. Merrell Dow Pharms. Inc*,
    509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469
    (1993)..................3, 7, 8, 9, 19, 22, 23, 24, 25, 26, 27, 38

*Davis v. Washington*,
    547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).
    ......................................................................18, 19

*Erlinger v. United States*,
    602 U.S. 821, 831-34, 144 S. Ct. 1840, 1851(2024)....35, 36

*Giles v. Maryland*,
    386 U.S. 66 (1967)...................................................30

*Guerrero v. Beto*,
    384 F.2d 886 (5th Cir. 1968).....................................30

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137, 149, 119 S. Ct. 1167, 1174-75 (1999)........25

*Murray v. S. Route Mar. SA*,
    870 F.3d 915, 918 (9th Cir. 2017)...............................24

*Powell v. Wiman*,
    287 F. 2d 275 (5th Cir. 1961).....................................30

*Rappuhn v. Primal Vantage Co., Inc.,*
 No. 23-10050, 2024 U.S. App. LEXIS 14101, at *8 (11th
 Cir. June 11, 2024)....................................................22

*Rivera v. Ring,*
 810 F. App'x 859, 863 (11th Cir. 2020)...........................23

*States v. Gleason,*
 265 F.Supp. 880 (S.D. N.Y. 1967).................................29

*United States ex rel. Drew v. Myers,*
 327 F.2d 174 (3d Cir. 1964).........................................29

*United States v. Baker,*
 432 F.3d 1189, 1223 (11th Cir. 2005)............................18

*United States v. Brester,*
 786 F.3d 1335, 1338 (11th Cir. 2015)............................17

*United States v. Brown,*
 415 F.3d 1257, 1264-65 (11th Cir. 2005).................16, 17

*United States v. Campagnuolo,*
 592 F.2d 852, 859 (5th Cir. 1979)................................30

*United States v. Caraballo,*
 595 F.3d 1214, 1230 (11th Cir. 2010)............................18

*United States v. Frazier,*
 387 F.3d 1244, 1260 (11th Cir. 2004)............................23

*United States v. Keogh,*
 391 F.2d 138 (2d Cir. 1968)........................................30

*United States v. Livesay,*
 587 F.3d 1274, 1278 (11th Cir. 2009)............................18

*United States v. Partin,*
    320 F. Supp. 275 (S.D . La. 1970)..................................29

*United States v. Ruiz,*
    536 U.S. 622, 628, 122 S. Ct. 2450, 2455 (2002)............29

*United States v. Schlei,*
    122 F.3d 944, 989 (11th Cir. 1997)...............................17

*United States v. Steed,*
    548 F.3d 961, 978 (11th Cir. 2008)...............................18

Statutes:
18 U.S.C.§2241(c)..........................................................1, 4, 6
18 U.S.C.§2422(b) ........................................................ 1,4, 6
18 U.S.C.§2244(a)(5) .....................................................1, 4, 6
18 U.S.C.§3231................................................................2
18 U.S.C.§3742................................................................2
28 U.S.C.§1291................................................................2

Other:
11 Cir. R. 28-5.................................................................1
Cumulative Error Doctrine...........................................18, 20, 22, 38
Fed. R. App. P. 4(b)(l)(A)(i)............................................. 2
Fed. R. App. P. 28-1(c)......................................................i
Fed. R. App. P. 34(a)(1)......................................................i
Fed. R. Evid. 403. ...........................................................23
Fed. R. Evid. 404(b). ........................................ii, 3, 14, 17, 34
Fed. R. Evid. 412. ..........................................15, 20, 32
Fed. R. Evid. 413. .........................................ii, 3, 4, 14, 17, 34
Fed. R. Evid. 702.............................................8, 22, 23, 24, 26, 27
U.S. Const. Amend V ....................i, ii, 3, 7, 17, 21, 28, 35, 37
U.S. Const. Amend VI....i, ii, 3, 7, 17, 18, 20, 21, 28, 34, 35, 37
USSG § 4B1.5(b)............................................36, 38

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellant Austin Burak was charged by a federal grand jury on four counts: count one 18 U.S.C.§2422(b) Attempted Coercion and Enticement of a Minor to Engage in Sexual Activity, count two 18 U.S.C.§2244(a)(5) Abusive Sexual Contact of a Child, count three 18 U.S.C.§2422 (b) Coercion and Enticement of a Minor to Engage in Sexual Activity, and count four 18 U.S.C.§2241(c) Aggravated Sexual Abuse of a Child.[Doc. 3[1]].

Appellant was reindicted on March 6, 2024 and charged with 18 U.S.C.§2422(b) Coercion and Enticement of a Minor to Engage in Sexual Activity, 18 U.S.C. .§2244(a)(5) Abusive Sexual Contact of a Child, 18 U.S.C.§2422 (b) Coercion and Enticement of a Minor to Engage in Sexual Activity, 18 U.S.C.§2241(c) Aggravated Sexual Abuse of a Child. [Doc. 26].

---

[1] Pursuant to 11th Cir. R. 28-5, references to the record in a brief must be to document number and page number. This brief cites to transcripts by the document number reflected on the docket sheet and the page number assigned by the court reporter.

The Government filed a motion to dismiss counts one and three of the superseding indictment on May 2, 2025. [Doc. 145]. Appellant proceeded to trial and was found guilty on the two remaining counts. [Doc. 168].

Sentencing was held and the final judgement was entered on September 11, 2025, in which Appellant was sentenced to two life sentences. [Doc. 206]. A notice of appeal was filed on that same day. [Doc. 207]. This filing occurred within 14 days of the written judgment, so it is timely. Fed. R. App. P. 4(b)(1)(A)(i).

Since the count of conviction states a violation of the laws of the United States, the district court had jurisdiction pursuant to 18 U.S.C. §3231. This Court has jurisdiction over the appeal under 28 U.S.C. §1291 and 18 U.S.C. §3742.

## STATEMENT OF THE ISSUE

Appellant appeals the verdict and raises the following issues on appeal:

1. The District Court erred by failing to hold a *Daubert* hearing or a pretrial hearing as to the expert and whether the expert was qualified to testify, including concerns of truthfulness.

2. Second, the prosecution failed to meet the requirements of providing exculpatory information and limited investigation into last minute disclosures resulting in Appellant not receiving a fair trial under the Fifth and Sixth Amendments of Constitution.

3. Third, the Court impermissibly curtail the investigation and questioning of the witnesses offered under Federal Rules of Evidence 404(b) and 413 and then use this information improperly in the sentencing phase as both justification for an increased sentence and for point enhancement purposes in violation of the Sixth Amendment of the Constitution.

## STATEMENT OF THE CASE

### 1. <u>Course of the proceeding and disposition in the lower court.</u>

This case arose out of an investigation by Army Criminal Investigation Division, herein known as "Army CID", following the outcry of Minor Victim 1, herein referred to as "MV1" who claimed that he was assaulted by Appellant in 2017. Following the outcry of MV1, Minor Victim 2, herein referred to as "MV2" also made allegations against Appellant.

The case was initially adopted for prosecution through the Army and court martial process. However, after a finding of no jurisdiction and an appeal to the Military Court of Appeals the case was dismissed on March 25, 2022.

The case was referred to the Southern District of Georgia and Appellant was indicted initially on January 10, 2024. [Doc.3]. Appellant was reindicted March 6, 2024 and charged with: 18 U.S.C.§2422(b) Coercion and Enticement of a Minor to Engage in Sexual Activity, 18 U.S.C. .§2244(a)(5) Abusive Sexual Contact of a Child, 18 U.S.C.§2422 (b) Coercion and Enticement of a Minor to Engage in Sexual Activity, 18 U.S.C.§2241(c) Aggravated Sexual Abuse of a Child. [Doc. 26].

Counts one and three were dismissed prior to trial by the Government. [Doc. 145]. Appellant proceeded to trial and was found guilty on the two remaining counts. [Doc. 168].

Sentencing was held and the final judgement was entered on September 11, 2025, in which Appellant was sentenced to two life sentences. [Doc. 206]. A notice of appeal was filed on that same day. [Doc. 207]. Appellant now challenges his

conviction and raises three issues for this Court's consideration.

## 2. **Statement of the facts.**

This case involves conviction for assaulting two minor victims in 2017. MV1 was found in a compromising position with another child and was questioned about the incident by family members and later by the Washington State Department of Children, Youth and Families on May 24, 2020. During this questioning MV1 claimed that he had been victimized by Appellant in 2017. This led to a full investigation of Appellant by the Army CID and a referral for military court martial.

During the investigation by Army CID for the Court Martial proceedings forensic interviews of MV1 and his sibling, Minor Victim 2, herein referred to as "MV2", were taken. MV2 also made claims of sexual abuse by Appellant during the investigation.

There was a pretextual call to Appellant by the stepfather of MV1 and MV2. Evidence included notes compiled by the

Army CID agents, information gathered by the convening board and attorneys to include cell phone records of Appellant, records from the Department of Children, Youth and Families and military service records to show locations, transfers and discharge dates.

The convening board found that the Army did not have jurisdiction over the case. This was appealed to the Court of Appeals through the military and the charges were officially classified as discharged on March 25, 2022 by the United States Army.

A federal grand jury indicted Appellant on four counts And was later reindicted on March 6, 2024 and charged with 18 U.S.C.§2422 (b) Coercion and Enticement of a Minor to Engage in Sexual Activity, 18 U.S.C. .§2244(a)(5) Abusive Sexual Contact of a Child, 18 U.S.C.§2422 (b) Coercion and Enticement of a Minor to Engage in Sexual Activity, 18 U.S.C.§2241(c) Aggravated Sexual Abuse of a Child. [Doc. 26]. The Government filed a motion to dismiss counts one and three of the superseding indictment on May 2, 2025. [Doc.

145]. Appellant proceeded to trial and was found guilty on the two remaining counts. [Doc. 168].

Sentencing was held and the final judgement was entered on September 11, 2025, in which Appellant was sentenced to two life sentences. [Doc. 206].

Appellant contends that he did not receive a fair trial under the Fifth or Sixth Amendments of the Constitution and challenges his conviction. Appellant will focus on three main issues in his factual recitation, issues surrounding the admittance and testimony or the Government's expert, Dr. Darrell Turner; failure to provide potentially exculpatory information and or investigate ongoing conduct of one of the victims and how his sentence appears to have been enhanced and gravely impacted through the use of prior acts evidence, after the Court requested parties curtail said testimony.

a. **Expert witness testimony.**

Expert testimony by Dr. Darrel Turner was allowed without a *Daubert* hearing or any pretrial admissibility hearing.  Notice of expert witness testimony was filed by the

Government on April 8, 2024. [Doc. 37]. A motion to supplement the Government expert disclosure was filed on April 10, 2025. [Doc. 120].

The Government filed numerous expert notices and amended notices on Dr. Darrel Turner that included extensive case listings and outcomes. [Doc. 37-2; Doc. 143-2]. These cases listed numerous trials and depositions in which the Doctor was said to have testified at either trial, in a deposition or both.

Appellant filed a comprehensive motion in limine pointing to Federal Rule of Evidence rule 702, which sets out the standards for reliable expert testimony and asking that Dr. Turner be excluded. [Doc. 122]. Appellant asked that a *Daubert* hearing be held in the alternative. [Doc. 122, pg. 11].

In the motion in limine, the resume and trial list containing a list of cases in which the Doctor was alleged to have taken part in trial was provided at Docs. 37-2 & Doc. 143-2 were laid out, and the nature of the proceedings were detailed. [Doc. 122, Pgs. 4-7]. In total twelve federal cases in

which Dr. Turner cites in his resume at Doc. 37-2; Doc. 143-2 are examined. Four cases were clearly cases where Dr. Turner only testified at sentencing, which he presents as "trial". Two of the cases were still redacted in PACER and the nature of his testimony is unclear. One case was just a pretrial evaluation of the Defendant, the case resolved in a plea but is categorized as a "trial". In two cases the Defense filed a motion to exclude Dr. Turner, and the case was resolved shortly thereafter without the Court issuing a ruling on Dr. Turner, and again he lists these cases as "trials".

The Government responded to Appellant's challenge of the expert and refuting the request for a hearing. [Doc. 133]. The Court denied Appellant's motion challenging the expert witness testimony and denying the request for a *Daubert* hearing on April 28, 2025. [Doc. 142]. Another motion to supplement expert testimony was filed by the Government on April 29, 2025. [Doc. 143].

Regardless of the request for pretrial examination of the witness, none was allowed and instead the witness was

allowed to testify before the jury. The Court allowed Dr. Turner to testify without giving the Defense an opportunity to lock him into a set of facts, question his methods or examine the purported court rulings that had allowed him to testify as an expert.

Dr. Turner was tendered as an expert in clinical psychology with an expertise in "sexual offending and the dynamics thereof", to include outcry information, grooming and risk assessment. [Doc. 178, Pg.30 & 31]. He was allowed to testify to about delayed reporting and other damning information that was meant to explain why incidents that occurred in 2017 were not reported until much later. [Doc. 178, Pgs. 36-43].

**b. Failure to Provide Exculpatory Evidence**

This case if rife with attempts by the Appellant to obtain and review accurate, complete information about the case. Initially, these attempts were collegial and were met with a certain level of cooperation by the Government. Understanding the sensitive nature of the case the Appellant

consistently consented to protective orders and protect information, limit disclosure and protect MV1 and MV2 as much as possible. [Doc, 24., Doc. 66, Doc. 69, Doc.104, Doc 144].

Appellant filed a motion to compel on August 8, 2024. [Doc. 72]. A motion for a writ of the military records was filed on August 9, 2024. [Doc. 74]. The Government filed a response to the request for a writ of mandamus and/or motion to compel the military documents. [Doc. 77]. A hearing was held on the writ and motion to compel, and at the conclusion of the hearing the Honorable Christopher L. Ray did provide guidance to the Government and reminded them of their duty "under the Constitution and *Brady v. Maryland*, 373 U.S. 83 (1963) related to the records from the prior military proceeding". [Doc. 101, pg. 2]. This resulted in additional information being provided but not the entirety of the military court martial records.

Located in the second portion of the Court Martial records are call logs and Facebook messages between the Appellant

and other people from the night of the incident. The Government never provided contact information or historical phone number information from the logs. The first time the historical phone number information was provided or the information about the Government making contact with the historical owners of the phone numbers was at trial through the cross examination of the Defendant, who admitted to being clearly intoxicated and not remembering the night in question. [Doc. 179, Pg. 50]. This was bolstered by the Government providing the information about the phone calls and the women who had owned the phone's historically in trial through the testimony of Agent Burns. [Doc. 180, pg. 56-58]. However, there was never any documentation, reports, search warrant returns, google search returns, telephone communication records or anything else provided to the Defendant prior to trial or during trial as to this information.

Also, it is important to note that the phone records did not come to light until the second round of military records were provided. Even the Government admitted that as of May 9,

2025 that they had not investigated the call logs or Facebook messages in their Motion to Preclude Impermissible Alibi Evidence, in which the Government states " Although the Government has attempted to investigate the potential alibi evidence, it cannot conduct the appropriate thorough investigation that the Federal Rules of Criminal Procedure contemplate. *Id.*; Fed. R. Crim. P. 12.1". [Doc. 152, pg. 3]. This did not stop the Government from conducting an ongoing investigation and providing testimony through Agent Burns about the content of said logs, without providing the information to the Defense on a rolling basis. [Doc. 180, pg. 56-58].

The Government filed the notice of intent to offer proof of other crimes on September 24, 2024. [Doc. 80]. A response to the Government's notice was filed by Appellant challenging the Government's notice, pointing out a number of issues, including the fact that the Government failed to meet the deadline set out in the third scheduling order. [Doc. 83].

A hearing was held before the Honorable Christopher L. Ray on December 13, 2024, at which the Government was ordered to file a motion in limine with respect to prior bad acts and that Appellant file his response by January 3, 2025. [Doc. 95].

The Court issued an order denying the Appellants motion to exclude the prior bad acts information and evidence provided under Fed. R. Evid. 404(b). [Doc. 108]. This meant that three women were permitted to testify to prior bad act, Hannah Sims, Julianna Hoye and Stephanie Powell. They are the sister of the Appellant, a cousin and a former sister-in-law.

Hannah Sims was utilized as a witness under Federal Rule of Evidence 404(b) and Rule 413. The Government provided three written reports on Sims summarizing conversations had with Sims. However, at trial Sims stated that she had sent an email to the prosecutor and believed that there possibly recordings of the phone calls. [Doc. 178, Pg. 82

& 83]. These items were not provided to the Defense prior to trial or at any point in the case.

Finally, MV1 made disclosures to the Government about continued or previously undisclosed sexual abuse he committed on another, younger child, the night before trial. [Doc. 178, Pg. 6]. This was brought to the Court's attention before testimony began in the trial, by the Appellant. [Doc. 178, Pg. 6]. There was a brief in camera discussion in which the Court pointed out that the confines of Federal Rule of Evidence 412 allowing introduction of the evidence. The Court stated this methodology wasn't met by the Appellant on the issue of the new disclosure, but there never was a real answer as to what the new disclosure was or what investigation was done into the admissions. [Doc. 182]. The only thing that was provided through proffer by the Government is that it was around the time of the outcry but no documentation, testimony or confirmation of any type was provided. [Doc. 178, Pg. 7&8].

### c. Sentencing Enhancement

During trial the Court held a sidebar at which the Court informed the parties that they wanted to set "boundaries around how far we go with each of these witnesses that are the prior acts evidence". [Doc.178, pg. 85]. While this is not facially an issue it becomes problematic when the evidence offered by these witnesses weighs as heavily in sentencing as it did in this case. The Court pointed to the testimony of Hannah Sims, a witness who was offered evidence of prior acts, as something the Court could and was considering in rendering a sentence. [Doc. 212, Pg. 17]. Further, the Court went on to question why the Appellant and Counsel would follow the Court's directive and not spend time on prior acts evidence in his testimony and then question that very motivation at sentencing. [Doc. 212. Pg. 45].

### 3. <u>Statement of the standard of review</u>

When reviewing a District Court's decision to admit expert testimony the standard is abuse of discretion. *United States v. Brown*, 415 F.3d 1257, 1264-65 (11th Cir. 2005). "Under the

abuse of discretion standard, the district court is allowed a range of choices, and we will affirm unless the district court applied the wrong law, followed the wrong procedure, relied on clearly erroneous facts, or committed a clear error in judgment." Id. at 1265-66.

Second, the prosecution failed to meet the requirements of providing exculpatory information and limited investigation into last minute disclosures resulting in Appellant not receiving a fair trial under the Fifth and Sixth Amendments of the Constitution. Alleged *Brady* violations or withholding of exculpatory evidence is reviewed under the *de novo* standard. *United States v. Brester*, 786 F.3d 1335, 1338 (11th Cir. 2015) (citing *United States v. Schlei*, 122 F.3d 944, 989 (11th Cir. 1997)).

Third, the Court impermissibly curtail the investigation and questioning of the witnesses offered under Federal Rules of Evidence 404(b) and 413 and then use this information improperly in the sentencing phase as both justification for an increased sentence and for point enhancement purposes in

violation of the Sixth Amendment of the Constitution. The standard of review for constitutional issues

concerning sentencing is *de novo*. *United States v. Steed*, 548 F.3d 961, 978 (11th Cir. 2008). The standard of review for a sentence imposed by a district court is reviewed for reasonableness, using an abuse-of-discretion standard. *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009). The standard of review of a district court's factual findings at sentencing is clear error, and its application of the Sentencing Guidelines to those facts is reviewed *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1230 (11th Cir. 2010).

Finally, the Cumulative Error Doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005), <u>abrogated in part on other grounds by</u> *Davis v.*

*Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)

## SUMMARY OF THE ARGUMENT

This is a case where there were multiple, cumulative issues arose that give rise to the manifest need for a new trial.

First, Dr. Turner was allowed to testify, without a *Daubert* hearing or any other mechanism that would have allowed for the Court to fulfill their duty as a gate keeper. Clear issues with his expert disclosures were not allowed to be addressed before testimony of a damning nature was given to the jury. Dr. Turner was not challenged on his clear factual misrepresentations in sworn affidavits to the Court. By not holding a *Daubert* hearing or allowing for an in-depth voir dire of Dr. Turner before allowing him to provide his opinion to the jury the Court failed to ensure a fair trial.

The Government then compounded issues by failing to provide information that could have been exculpatory. When new information arose during the trial preparation and during

the trial itself the Government failed to adequately provide the evidence to Defense counsel. Further, when an issue of a new allegation of sexual misconduct by a victim was raised the Court did not hold a full inquiry of the issue and instead relied upon the murky musings of the Government and fell back on Federal Rule of Evidence 412 to excuse why the information should be examined in a limited way, even if it was very possibly exculpatory in nature.

Third, the Court curtailed information and testimony at the trial of the Appellant and then quoted to and used said information in part to assist in determining the appropriate sentence. Had the Court intended to quote back to, discuss or rely on said testimony then the Defendant had a Sixth Amendment right to fully challenge and explore such information.

Finally, even if one of these errors alone is not adequate to require a new trial the totality of the errors should be considered under the Cumulative Error Doctrine. This trial was manifestly unjust and resulted in the deprivation of

Appellants rights under both the Fifth and Sixth Amendments of the Constitution.

## ARGUMENT AND CITATION OF AUTHORITY

No person shall be "deprived of life, liberty or property without due process of law". USCS Const. Amend. 5. Further, any witnesses used in the prosecution shall be subject to being confronted. USCS Const. Amend. 6.

In the matter at hand the trial manifested as a violation of both the Fifth and Sixth Amendments of the Constitution because of the fact that the Court did not act as a gate keeper against the damning testimony of an expert witness who provided false information in sworn affidavits to the Court. The Government failed to meet their burden of providing potentially exculpatory information to the Defense and when an issue was brought to the Court's attention it was again quelled in a fashion that left the question of whether the information was exculpatory unanswered.

Once a conviction was obtained the Court then used information to justify, if not enhance Appellant's sentence

even though the Court itself had limited the exploration of such information in a confrontational setting.

Any one of these issues alone is adequate to justify reversal, and even if the Court of Appeals does not agree then the Court should apply the Cumulative Error Doctrine and grant a new trial.

### 1. The District Court erred by failing to hold a *Daubert* hearing or a pretrial hearing as to the expert and whether the expert was qualified to testify, including concerns of truthfulness.

An expert witness may testify if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert reliably applied the principles and methods to the case's facts. Fed. R. Evid. 702. *Rappuhn v. Primal Vantage Co., Inc.,* No. 23-10050, 2024 U.S. App. LEXIS 14101, at *8 (11th Cir. June 11, 2024).

Under Federal Rule of Evidence 702, the Court must act as a gatekeeper and ensure "that an expert's testimony both

rests on a reliable foundation and is relevant to the task at hand.". *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

Without a clear connection between the expert's testimony and a material fact in the case, the testimony should be excluded as irrelevant, particularly as it would then only confuse the issues, mislead the jury, and waste time. *See* Fed. R. Evid. 403.

Proving the burden of an expert's reliability is the responsibility of the party that is offering the witness as an expert under Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. at 592, 592 n.10, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Reliability is part and parcel of what a Court must find prior to admitting a witness as an expert. *Rivera v. Ring*, 810 F. App'x 859, 863 (11th Cir. 2020) citing to: *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

Expert testimony, such as that provided by Dr. Truner should be closely examined and investigated by the Court of

inquiry, who shall act as a gate keeper to ensure that the information provided to the trier of fact is accurate and reliable. This includes whether the expert themselves is reliable and truthful.

Appellant filed a comprehensive motion in limine pointing to Federal Rule of Evidence rule 702, which sets out the standards for reliable expert testimony. [Doc. 122]. An expert witness may testify if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) the expert reliably applied the principles and methods to the case's facts. Fed. R. Evid. 702. *Rappuhn v. Primal Vantage Co., Inc.*, No. 23-10050, 2024 U.S. App. LEXIS 14101, at *8 (11th Cir. June 11, 2024).

The purpose of the ***Daubert*** hearing is to thoroughly examine the reliability of the proffered expert opinion. *Murray v. S. Route Mar. SA*, 870 F.3d 915, 918 (9th Cir. 2017). Where

an expert's testimony's factual basis, the information used to form the opinion or methods are sufficiently called into question then the trial judge **must** determine if the testimony has a reliable basis. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1174-75 (1999).

In this case not only did the Defense raise the issue of reliability prior to trial to obtain a *Daubert* hearing, the Defense again raised the issue at trial. Counsel requested to voir dire the witness on his experience and on his disclosures at Doc. 37 and Doc 143. [Doc. 122; Doc. 178, pg. 34]. However, when Counsel turned the Doctor's attention to his case list and affidavit the court determined that this was an issue of credibility and not admissibility. [Doc. 178, pg. 35]. The Court then tendered the Doctor as an expert and allowed for him to testify to his opinion and opened the door to everything that goes with the weight of an expert opinion.

It was not until cross examination of the witness was the Defense able to bring up the affidavit and the list of cases attached thereto. [Doc. 178 at pg. 45 & 46]. During cross

examination the Defense raised the exact issues of credibility raised in the pretrial motion, pointing out cases that were listed as trials and then settled, pled or were handled in some out of court methods. [Doc. 178, pg. 45-49]. This is the first time in the case that the issue of false representations to the Court and in the expert disclosure is addressed.

This raises an issue with cornerstone expert testimony and why the Appellant requested a Daubert hearing or the ability to voir dire the witness prior to his testimony. If we pull apart Federal Rule of Evidence 702, we can see where this implicates each of the four prongs which a court must find in order to find an expert reliable. First, prong a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue", how can that be when the specialized knowledge includes so called trials that never happened. Fed. R. Evid. 702 (a). Prong (b) "the testimony is based on sufficient facts or data", again the testimony is based on at least in part on lies and that raises questions of

reliability with respect to the underlying facts or date. Fed. R. Evid. 702(b). Prong (c) "the testimony is the product of reliable principles and methods", this is implausible because the testimony about anything that happens in a trial or prosecution should have been called into question the moment that the Doctor testified, he doesn't differentiate between trials, depositions, sentencings and that he swore to an affidavit misrepresenting hearings to this Court. [Doc.178, pg. 49]. Prong (d) "the expert reliably applied the principles and methods to the case's facts". Fed. R. Evid. 702(d). How can we begin to assess if he reliably applied principles when he can't even reliably report to the Court what his background is. To allow an expert to stand that lied in affidavits to this Court and were filed into the record by the Government on at least two separate occasions is a egregious error, one that could have easily been remedied by allowing a hearing before hand. Further, this is what the Defense was able to discern from the limited information available and in front of the jury, had the Court granted a *Daubert* hearing there is no telling

what else could have been uncovered through a thorough examination.

**2. Second, the prosecution failed to meet the requirements of providing exculpatory information and limited investigation into last minute disclosures resulting in Appellant not receiving a fair trial under the Fifth and Sixth Amendments of the Constitution.**

The Defense in this case was entitled to all exculpatory evidence, and the Government was reminded of this duty by the Court on numerous occasions such as the motion hearing on the issue of the military records. At the conclusion of that hearing the Magistrate Court issued a ruling reminding the Government of their obligations "under the Constitution and *Brady v. Maryland*, 373 U.S. 83 (1963) related to the records from the prior military proceeding". [Doc. 101, pg. 2].

There are three main issues that the Defendant raises with regards to if the Government met this burden and provided all of the information:

1. Did the Government provide full information about and regarding Hannah Sims.

2. Did the Government and Court adequately investigate the outcries of MV1 about potential other sexual activity

in which MV1 was the potential perpetrator, mainly when this activity was taking place.

3. Did the Government provide potentially exculpatory information about the call logs, owner of the phone numbers and apps or other items being used.

Exculpatory evidence is any evidence that could favor the accused, effect witness credibility or could cast doubt on the guilt of the accused. *United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450, 2455 (2002).

The right of a defendant to disclosure of favorable evidence exists whether such evidence is material to the defendant's guilt or to the mitigation of his punishment, and regardless of whether such exculpatory evidence would be admissible at trial. *Brady v. Maryland*, 373 U.S. 83, 86 (1963).; United *States v. Gleason*, 265 F.Supp. 880 (S.D. N.Y. 1967). This right to disclosure under *Brady* includes the right to pre-trial discovery by the defendant. Id.; *United States v. Partin*, 320 F. Supp. 275 (S.D . La. 1970); *United States ex rel. Drew v. Myers*, 327 F.2d 174 (3d Cir. 1964).

Evidence which may serve to impeach the testimony or credibility of a government witness is discoverable under

Brady since the duty upon the government to disclose evidence favorable to a defendant under *Brady* applies to any information "favorable to the accused either as direct or impeaching evidence." *United States v. Campagnuolo*, 592 F.2d 852, 859 (5th Cir. 1979); *United States v. Keogh*, 391 F.2d 138 (2d Cir. 1968) (disclosure of financial report which may have impeached government witness); *Guerrero v. Beto*, 384 F.2d 886 (5th Cir. 1968) (fact that eyewitness to crime initially failed to identify defendant at lineup); *Powell v. Wiman*, 287 F. 2d 275 (5th Cir. 1961) (mental instability on part of key prosecution witness); *Giles v. Maryland*, 386 U.S. 66 (1967) (evidence of prior chastity and mental condition of complaining witness).

USCS Fed Rules Crim Proc R 16 sets forth a number of affirmative requirements for the Government and the Defense. Most importantly USCS Fed Rules Crim Proc R 16(c) has a continuing duty to disclose information. This includes before and during trial. (Id).

As with many cases that investigation in this case continued well into the trial preparation stage and into trial. This is standard for attorneys to continue to interview witnesses, prepare them to testify and to learn new information as the case goes. This issue is making sure that information is turned over on a continuing basis.

In the case of Hannah Sims, she testified to items that she believed to exist that where never provided. The issue with Hannah Sims is that she was very clearly a prosecution witness and the information that she is stating exists such as an email reaching out to try and insert herself into the case and possible phone call recordings are items that could very easily contain exculpatory information. There are things that are not tangible in evidence sometimes and can't be simply regurgitated in the form of a summary. For example, tone of voice, muttered comments and other information that could go to a motive, a thought process and most importantly credibility. In cases of sexual assault, where there is no

physical evidence like this case, credibility is the cornerstone of a witness and their testimony.

Similarly, the issue with MV1 and his disclosure. The only mention to it is from Assistant United States Attorney "AUSA" Stephan who says that this must come from an email that was sent last night. [Doc. 178, pg.7]. The Court then went into an in camera discussion of the information with the attorneys at Doc. 182. There was not additional information provided, no follow up and the Court did not require any further information. The Court pointed to Rule 412 of the Federal Rules of Evidence and that they couldn't be followed here because of when the disclosure occurred. But to this day there is no clarity in what the disclosure was outside of the statements made by the AUSA:

> And just briefly talking to the witnesses last night,when we talked to Minor Victim Number 1, he disclosed around that time there were other times him and his brother may have touched each other. Not currently, not ongoing. I'm not sure where -- maybe I didn't word my email correctly enough. But we're talking about the time frame of his disclosure. We're not talking about ongoing since that point in time. If I think -- and I'd have to 100 percent clarify this with the witness -- I think it stopped the day

that he was caught with his half-brother. I don't
think it continued past that point.

[Doc 178, pg. 7].

Third, there is a discovery question about the phone call
lists and the information from who the Defendant was calling.
While there were some names and information discussed by
the AUSA during the cross examination of the Appellant the
real information that the Government had did not come until
the testimony of Agent Burns. [Doc. 180, pg. 56-58].

Agent Burns was able to provide names and historical
information about the phone numbers that was never provided
until his testimony. [Doc. 180, pg. 56-58]. Information that
when he was cross examined did not come from any type of
cell phone search warrants, social media search warrants or
other seizures or investigative efforts by Army CID. [Doc. 180,
pg. 52-54]. Agent Burns admits that throughout his whole
investigation he did not attempt to supplement the electronic
data. [Doc 170, pg. 55]. Agent Burns did however point out
that one of the phone numbers from the night in question was
Hannah Sims, the same Hannah Sims that had inserted

herself into the investigation and whose full role is unknown. [Doc. 180, pg. 57].

It is easy to say that this information was not discoverable or was not available or would not have changed the outcome. The reality is that should have been for the Jury to decide and the Government should have provided the information, especially in a case where there is no physical evidence, it was six years old before the investigating Agent received the case and where motives for false or inaccurate reporting need to be examined to their fullest.

3. **Third, the Court impermissibly curtail the investigation and questioning of the witnesses offered under Federal Rules of Evidence 404(b) and 413 and then use this information improperly in the sentencing phase as both justification for an increased sentence and for point enhancement purposes in violation of the Sixth Amendment of the Constitution**

Only a jury may find "'facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2363 (2000). This has been expanded to any fact, other than a prior conviction that increases the maximum

penalty for a crime should be in the providence of the jury. *Id.* at 476. This was comprehended and looked at in the *Erlinger* case, where the issue of whether a Defendant is an armed career criminal or not had to be decided by the jury and rested in the providence of the jury. *Erlinger v. United States*, 602 U.S. 821, 831-34, 144 S. Ct. 1840, 1851 (2024). "Judges may not assume the jury's factfinding function for themselves, let alone purport to perform it using a mere preponderance-of-the-evidence standard. To hold otherwise might not portend a revival of the vice-admiralty courts the framers so feared. *Id.* at 834-835. That is because the power to find facts that enhance or change sentencing ranges belong to the jury under both the Fifth and Sixth Amendment of the Constitution. *Id.* at 835.

In the case at hand the initial presentence investigation and second presentence investigation report provided for two different sentencing ranges. Initially, the Appellant was in the range of 360 months to life. [Doc. 184, pg. 24]. This changed in the second presentence investigation after the

Government filed an objection and requested a five-level enhancement under USSG § 4B1.5(b), for the defendant engaging in repeat sexual offending against minors. [Doc. 190-1, pg. 1]. The Defense argued against this at sentencing and filed a written objection to the final presentence investigation which assigned this enhancement. [Doc. 198; Doc. 203, Pg. 10-12]. The Court granted the enhancement and sentenced the Defendant to the new range which was life in prison. [Doc. 203, pg 18 & 48].

The issue is twofold in this situation first the Appellant argues that sentencing in this instance should be looked at through the Lense of a changing scheme as stated in the Erlinger case. *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 1851 (2024). What that case stands for and discusses is how there is a shift, a creation of new precedence and a movement towards jury driven sentencing guidelines. *Id*. The Courts no longer believe that delegation of sentencing minimums and maximums should be found by a Judge but

instead belong to the people under the Fifth and Sixth Amendment of the Constitution.

This then raises the second issue that the Defendant believe impacted his sentencing and that is the actions that the Court took to curtail certain evidence and questioning about prior bad acts following the testimony of Hannah Sims. [Doc. 212, Pg. 17]. The Court informed parties that the Court wanted to "boundaries around how far we go with each of these witnesses that are the prior acts evidence". [Doc.178, pg. 85]. This limited and guided what and how evidence was presented moving forward.

Even though the Court in the trial wanted to point to limitations of prior acts, the Court did not hesitate to bring up the issue in rendering a sentence. [Doc. 212, Pg. 17]. Further, the Court went on to question why the Appellant and Counsel would follow the Court's directive and not spend time on prior acts evidence in his testimony and then question that very motivation at sentencing. [Doc. 212. Pg. 45]. All of which ties back to why the higher Courts seem keen to let the issues play

out in front of the jury and let the jury decide certain issues that concern sentencing. Sentencing should be an issue reserved for the people by the Constitution.

## CONCLUSION

In conclusion the Appellant requests four things from this Court.

First, that the Court of Appeals find that failure to hold a *Daubert* hearing or to allow for voir dire of Dr. Turner was reversible error.

Second, that the Government failed to meet their burden under *Brady v. Maryland,* 373 U.S. 83 (1963) and USCS Fed Rules Crim Proc R 16.

Third, that the issue of whether the Appellants sentence should have been increased under USSG § 4B1.5(b), for the defendant engaging in repeat sexual offending against minors should have been decided by the jury.

Finally, that even if no single error rises to the level of requiring a new trial or new sentencing that when taken as a whole picture and in light of the Cumulative Error Doctrine

there is a need to overturn the verdict and order a new trial.

Respectfully submitted on 12/17/2025.

<u>/s/ *Skye Ellen Musson*</u>
Skye Ellen Musson
State Bar No.: 513712
33 Bull Street, Suite 510
Savannah, Ga 31401
Skye@mussonlawoffices.com
Phone: 912-596-4661

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-column limitations of Fed. R App. P. 32 (a)(7)(B) because this brief contains 6736 words, excluding the portions of the brief excluded under Fed. R App. P. 32 (a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R App. P. 32 (a)(5) and the type style requirements Fed. R App. P. 32 (a)(6) because this brief has been prepared in proportionally spaced typeface using Century Schoolbook 14 point font.

Respectfully submitted on 12/17/2025.

*/s/ Skye Ellen Musson*
Skye Ellen Musson
State Bar No.: 513712
221 W Duffy St, D
Savannah, Ga 31401
Skye@mussonlawoffices.com
Phone: 912-596-4661

# CERTIFICATE OF SERVICE

Today I served a copy of this Brief of the Appellant upon the Government by filing it on the Court's CM/ECF Portal, which generates a notice of electronic filing that is delivered to all counsel of record, along with a link to retrieve a file-stamped copy of the document filed.

Respectfully submitted on 12/17/2025.

/s/ *Skye Ellen Musson*
Skye Ellen Musson
State Bar No.: 513712
221 W Duffy St, D
Savannah, Ga 31401
Skye@mussonlawoffices.com
Phone: 912-596-4661